IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

**FILED**

**June 19, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0957

IN RE:  MARLEY M.

Appeal from the Circuit Court of Morgan County
The Honorable Andrew N. Frye, Jr., Judge
Civil Action No. 12-A-1

REVERSED AND REMANDED WITH DIRECTIONS

Submitted:  March 26, 2013
Filed:  June 19, 2013

Christopher J. Prezioso, Esq.
Martinsburg, West Virginia
Counsel for Petitioner

R. Steven Redding, Esq.
Martinsburg, West Virginia
Counsel for Derek M.

Nicholas F. Colvin, Esq.
Martinsburg, West Virginia
Guardian ad Litem for Marley M.

Patrick Morrisey, Esq.
Attorney General
Lee Niezgoda, Esq.
Assistant Attorney General
Charleston, West Virginia

Tracy Weese, Esq.
Shepherdstown, West Virginia
Counsel for Mary Y. and Tim Y.

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2. "In an abuse and neglect case, the offer of a voluntary relinquishment of parental rights does not obviate the statutory requirements regarding the necessity for proceeding with the adjudicatory and dispositional phases of the abuse and neglect case. Prior to accepting an offer of voluntary termination of parental rights, a reviewing court must conduct the hearings required by West Virginia Code §§ 49–6–2 and 49–6–5." *In re T.W.*, 230 W.Va. 172, 737 S.E.2d 69 (2012).

3. "Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability." Syl. pt. 2, *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 485 S.E.2d 865 (1996).

4. Where during the pendency of an abuse and neglect proceeding, a parent offers to voluntarily relinquish his or her parental rights and such relinquishment is accepted by the circuit court, such relinquishment may, without further evidence, be used as the basis of an order of adjudication of abuse and neglect by that parent of his or her children.

5. A parent whose rights have been terminated pursuant to an abuse and neglect petition may request post-termination visitation. Such request should be brought by written motion, properly noticed for hearing, whereupon the court should hear evidence and arguments of counsel in order to consider the factors established in Syllabus Point 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), except in the event that the court concludes the nature of the underlying circumstances renders further evidence on the issue manifestly unnecessary.

BENJAMIN, Chief Justice:

Morgan Y.[1], appeals the July 10, 2012, order of the Circuit Court of Morgan County terminating her parental rights to her daughter, Marley M., born May 5, 2010. Morgan Y. was alleged to have intentionally abused two unrelated, non-household member children, who were alleged to have been left in her care, which allegations formed the basis of the Department of Health and Human Resources' [hereinafter "DHHR"] petition. At the outset of the adjudication hearing, Morgan Y. voluntarily relinquished her parental rights to Marley in lieu of proceeding with the adjudication hearing, which relinquishment was accepted by the circuit court. Morgan Y. then moved for post-termination visitation, which request was immediately denied by the circuit court without receiving evidence pertaining to such request.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in failing to enter an order of adjudication and in failing to conduct a hearing and receive evidence on the issue of post-termination visitation. Therefore, we reverse the circuit court and remand this case for further proceedings, as appropriate, consistent with this opinion.

---

[1] We identify the last names of the parties and family members in this case by their initials only, following our practice of protecting the identity of juveniles in sensitive cases. See *State ex rel. West Virginia Dept. of Human Services v. Cheryl M.*, 177 W. Va. 688, 689, n. 1, 356 S.E.2d 181, 182 n. 1 (1987).

1

# I. FACTS AND PROCEDURAL HISTORY

This case arises from an abuse and neglect case filed in January 2012, alleging that Marley M. was an abused and neglected child. The abuse and neglect petition did not allege wrongdoing on the part of Marley M.'s father, Derek M., but did allege that harm befell two other children who each had been left temporarily and on separate occasions in the care of Morgan Y., Marley M.'s mother. The affected children were not Morgan Y.'s children, but were her friends' children.[2]

The petition alleged that the first incident of abuse involved six-week-old Kylie R. who was left in the care of Morgan Y. on October 14, 2011. Morgan Y. told Kylie R.'s mother that the baby had stopped breathing while in her care, and that Morgan Y. had cleared an obstruction from the child's throat. During the course of subsequent hospital treatment, it was determined that Kylie R. had suffered three non-accidental broken bones in her left leg.

The petition further alleged that a second incident of abuse occurred on December 29, 2011, involving another child, Blake P., who was left in Morgan Y.'s care while Blake P.'s mother went outside to talk on the telephone. While in the care of Morgan Y., Blake P. suffered a spiral fracture to the femur.

---

[2] Additional parties to this proceeding are Tim Y. and Mary Y., Marley M.'s maternal grandparents, who intervened in this proceeding.

Morgan Y. offered explanations for each child's injury and denied any wrongdoing. She was arrested on January 20, 2012, for child abuse causing injury to Blake P.[3]

The abuse and neglect petition filed against Morgan Y. did not contain any allegations of direct harm caused to Marley M. by her mother; instead, the petition and amended petition alleged that the other children left in the care of the petitioner, Kylie R. and Blake P., were harmed by Morgan Y. while in her care. The amended petition further alleged that Marley M. was at risk for abuse and neglect because her mother was a drug abuser and prescription drug addict. Morgan Y. denied the allegations and moved to dismiss the amended abuse and neglect petition.

At the adjudicatory hearing in June of 2012, Morgan Y. argued that the allegations in the petition were insufficient. Morgan Y. posited that there were no allegations of harm or threatened harm specifically regarding Marley M., and as such, the petition should be dismissed. The basis of Morgan Y.'s argument was the fact that the injured children were not related to Marley M. and were never members of Marley M.'s household. She argued that Marley M. was in good health and appeared to have been

---

[3] The petitioner was later indicted by the Jefferson County grand jury. That indictment was dismissed during the pendency of this appeal. At oral argument the parties advised the Court that the petitioner had again been indicted on these charges and that she awaits trial.

3

well cared for prior to the filing of the petition. Furthermore, she argued that even if the allegations of harm to the other children were true, Marley M. was not at risk because the children were not her siblings or household members, both statutory requirements for any harm to these children to be considered a risk of harm to Marley M.[4]

The circuit court denied Morgan Y.'s motion to dismiss. After announcing this ruling, the circuit court proceeded forward with the hearing and directed the Department of Health and Human Resources ("Department") to call its first witness. Thereupon, Morgan Y., through her counsel, announced that she wished to voluntarily relinquish her parental rights to Marley M. Specifically, counsel stated as follows:

> THE COURT: Very good. All right. We're back on the record in the Morgan County Circuit Court in M[.], it's 12-JA-1. I understand you've got the issues resolved.
>
> MR. PREZIOSO: Yes, Judge, I have spoken to my client. Of course, we really appreciate the Court's letting us argue these motions. They are interesting issues as Mr. Colvin pointed out and what we've done is I've been talking to my client since day one since she came in here and I've reviewed all the petitions with her and we would like to tender to the Court a relinquishment of all parental rights to the child to the Court and I don't think we're going to have objection from the guardian ad litem. I don't think so or we're going to have objection from respondent, Derek M[.], or from the intervening grandparents. I'm not sure we're going to have a strong objection from the department but for the Court's consideration we would tender that to the Court.
>
> THE COURT: I'll hear the objections.

---

[4] Derek M., Marley M.'s father, and Tim Y. and Mary Y., Marley M.'s maternal grandparents, joined in this motion to dismiss.

4

MR. COLVIN: I would have no objection to that, your honor. I think that's in the best interest of my client, Marley. I don't think there's any question about that. I think she's going to be fully protected. I think she's safe and to provide for her safety in the future so I agree with the relinquishment.

MR. PREZIOSO: And I can review the terms with my client.

MS. MCLAUGHLIN: The department does object to the relinquishment without an adjudication. I think the department's position is that it's just best to have an adjudication where there is grounds for the adjudication therefore they would object to the relinquishment short of the adjudication.

THE COURT: The Court finds that the surrender of parental rights is in the best interest of the infant child and Morgan Y[.] therefore the Court will permit the voluntary relinquishment. Exceptions are saved. You may go through the colloquy.

MR. PREZIOSO: I would like to, Judge, just to make sure.

THE COURT: Instead of me.

MR. PREZIOSO: Whatever you prefer, Judge.

THE COURT: No, you go ahead you're right there.

BY MR. PREZIOSO:

Q. All right, Ms. Y[.] would you state your name for the record.

A. Morgan Y[.]

Q. Ms. Y[.], we had a conference in our office yesterday where we drafted up a relinquishment of parental rights and you've had time to review this, correct?

A. Yes.

Q. Any questions you'd have about it about what we drafted up here?

5

A.                      No.

Q.                      You do understand that I think that it does say that the child's going to remain in the custody of the department but actually the child's going to remain in the custody of respondent Derek M[.], correct?

A.                      Yes.

Q.                      You understand that we're waiving a disposition and adjudicatory hearing in this matter and you're going to voluntarily relinquish your parental rights to Marley M[.], you understand that?

A.                      Yes.

Q.                      And paragraph two which is probably the most important that you understand this is going to result in the termination of your parental rights to Marley M[.] Do you understand that, Morgan?

A.                      Yes.

Q.                      You understand that as a consequence of your termination you have no right to custody or visitation. You have no right to participate and determine the care, custody, control, education, training, raising or rearing of the infant child named herein, do you understand that?

A.                      Yes.

Q.                      And you are fully understanding you're relinquishing all parental rights and you're waiving your right to a dispositional hearing and that such hearing would not be conducted, you understand that?

A.                      Yes.

Q.                      You understand that there are other less drastic alternatives to termination. For instance, we're here today to have an adjudicatory hearing. I filed a motion for a preadjudicatory improvement period but you understand if you went through that adjudicatory hearing that there are possibilities that even if you were found to have abused and neglected you could have an improvement period. You understand that?

A.     Yes.

Q.     You also understand that if we go forward and there's a disposition hearing you could also be granted an improvement [period]. Do you understand that?

A.     Yes.

Q.     But by entering this relinquishment you're giving up all rights to your adjudicatory hearing, your disposition hearing, and your right to have the Court put you in an improvement period, you understand that?

A.     Yes.

Q.     You have to assume that this relinquishment of parental rights is final. This is the final disposition of the custody of the infant in this case as it relates to you and - - well I think I have some superfluous language here about consent to adoption which I don't think is going to be an issue obviously because she's with Derek - -  but on down the road if for instance an abuse and neglect proceeding were filed against Derek and he lost custody that if the DHHR were to come back they could adopt this child to someone else. Do you understand that?

A.     Yes.

Q.     And you understand that you have an attorney and I'm here with you today. Is there anything you feel like we haven't gone over?

A.     No.

Q.     Do you want to take any time whatsoever to think about this or are you comfortable offering this relinquishment today in court?

A.     I'm fine with it.

Q.     You're not fine with it but you understand, yes?

A.     Um-hum. (Indicating yes.)

Q.     You understand that - -

7

MR. PREZIOSO: And judge, this is an issue maybe that I need to reconsider this. It kind of didn't pan out what I thought was going to happen but would I be entitled to appeal your decision if I relinquish I mean I can always ask but the motion to dismiss because I did put something in there that said we wouldn't be able to appeal the ruling based upon the relinquishment but I mean I may want to consider that if someone else appeals that ruling. I don't know, Judge, could I be given leave to address the issue on appeal or does this relinquishment encompass that?

THE COURT: Well the petitioner's objecting to the termination.

MR. PREZIOSO: Oh, okay.

THE COURT: So I don't think that you're going to be given the right to appeal when I've overruled their objection.

MR. PREZIOSO: I meant the issue on the motion to dismiss, Judge.

THE COURT: I understand that.

MR. PREZIOSO: I understand it too.

MS. MCLAUGHLIN: Yeah, I think once you relinquish I don't think she has standing anymore to file.

THE COURT: Once she relinquishes it's over. Right. As far as I'm concerned she has no standing whatsoever nor does she have any right to consideration for adoption.

MR. PREZIOSO: I understood that, Judge. I put that in there. It was kind of an interesting situation I got to argue the motion to dismiss before we did the relinquishment. I'm going over that with her though.

BY MR. PREZIOSO:

Q. And you understand you've read this relinquishment of parental rights and you full understand the document,. Is that correct?

A. Yes.

8

Q.                    And no one's coerced you or threatened you into signing this document and no promises or rewards have been offered in consideration of your signing, is that correct?

A.                    Yes.

Q.                    Now by executing this instant voluntary relinquishment you do not make any admissions to any of the allegations raised in the previously filed petition for abuse and neglected, do you understand that?

A.                    Yes.

Q.                    Accordingly, you are freely, knowingly and voluntarily relinquishing your parental rights to Marley M[.], you understand that?

A.                    Yes.

Q.                    Now, that's your signature on there I'm going to tender this to the Court, okay, and just for the record you understand that you can't be living in the home with the child. You understand that?

A.                    Yes.

Q.                    And you understand that means - - you know I'm not sure what the status of your relationship is with the respondent but you can't be living in that home. Do you understand that if the custodial parent gives you any time whatsoever it has to be supervised. You cannot be left alone with that child you understand that?

A.                    Yes.

Q.                    And you can I guess theoretically be subject to contempt proceedings for your violation or Mr. M[.] could have problems with keeping this child in his custody do you understand that?

A.                    Yes.

MR. PREZIOSO:        I don't have anything further, Judge.

9

THE COURT: Anybody else have any questions? The Court has none.

MR. COLVIN: The only question I have I don't know is the respondent mother making any motions for future post-termination visitation? At this point there wouldn't be any visitation with the child absent a Court ruling or petitioning the same.

MR. PREZIOSO: We would make a motion for post-termination visitation. I was going to address that next. I'm not sure if there's going to be objection to that or not considering we have two supervisors in the form of Mr. and Mrs. Y[.] and we have Mr. M[.] who's certainly capable of making sure this child is not injured. I would make a motion for it to leave it at the caregiver's discretion.

THE COURT: I will leave it at the discretion of the DHHR.

MS. MCLAUGHLIN: I don't know that we can do that, Judge.

THE COURT: Don't you have custody?

MS. MCLAUGHLIN: No, the father has custody.

THE COURT: I thought the father had physical but legal was in DHHR.

MS. MCLAUGHLIN: No, unfortunately. The father has both physical and legal custody at this point in time. I think from the standpoint of the best interest of the child, you know, unfortunately there's no way to monitor whether or not the mom is back in the home or not. If you allow supervised visitation with the father essentially you're permitting her to do exactly what we've sought not to happen which is for her to be around this child.

THE COURT: No. I'm not going to allow that period. The order will so reflect.

MR. PREZIOSO: So they'll be no contact between - - -

THE COURT: None. None.

MR. COLVIN: We would seek that, your Honor, in a protective order to be reflected in the order.

MS. WEESE: And note the objection of the grandparents who have an approved home study and I believe would be appropriate supervisors. Currently the child does not live in the home but spends a substantial amount of her time there.

THE COURT: Objection's noted. Anything else?

MR. REDDING: Your Honor, if you would kindly note my objection as well on behalf of Mr. M[.]

THE COURT: Yes sir. Anything else? All through, all done? You're excused. Mr. Colvin, you will do the order please.

MR. COLVIN: Yes, sir.

## II. STANDARD OF REVIEW

This Court has held, with regard to our review of abuse and neglect findings:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

11

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With these principles in mind, we turn to Morgan Y.s' assignments of error.

## III. DISCUSSION

Morgan Y. asserts two assignments of error. First, she asserts that the circuit erred in denying her motion to dismiss the subject petition inasmuch as the allegations of abuse pertained to "stranger infants," i.e. infants to whom Marley M. is not related, nor with whom she resides in the same household. Morgan Y. further asserts that she had no caretaking responsibilities as pertains to the allegedly abused infants. Second, Morgan Y. asserts that the circuit court erred in failing to take evidence regarding post-termination visitation. We decline to address Morgan Y.'s first assignment of error, for reasons stated herein. We do find that the absence of an order of adjudication—whether obtained by full evidentiary hearing or on the basis of the relinquishment—was error. We find further that the circuit court erred in failing to conduct an evidentiary hearing on the issue of post-termination visitation. We will discuss each issue in turn.

### A.      Termination of Parental Rights

Morgan Y. argued below, and argues upon appeal, that Morgan Y.'s parental rights to Marley M. cannot be terminated on the basis of acts of abuse or neglect inflicted upon another child who does not reside in the same household with Marley M. We decline to resolve this issue, because the record below was limited by Morgan Y.'s voluntary relinquishment, which will be discussed more fully *infra*. The relinquishment

12

happened at the start of the Department's presentation of evidence on the issue of adjudication. Therefore, there was no evidence adduced at this proceeding on the allegations in the complaint. We cannot discern if the Department would have proceeded to the adjudication on the allegations of harm to other children who may have been in the custody of Morgan Y., or proceeded on the basis of Morgan Y.'s purported drug abuse that may have posed harm to Marley M. Therefore, this Court cannot make a determination of this appeal on this ground.

## B. Voluntary Relinquishment

Morgan Y.'s voluntary relinquishment of her parental rights to Marley M. was accomplished prior to the issuance of our recent opinion in *In re T.W.*, 230 W.Va. 172, 737 S.E.2d 69 (2012). In *T.W.*, this Court clarified the statutory requirement that irrespective of a voluntary relinquishment of parental rights, the adjudication and disposition phases of an abuse and neglect proceeding must be conducted:

> In an abuse and neglect case, the offer of a voluntary relinquishment of parental rights does not obviate the statutory requirements regarding the necessity for proceeding with the adjudicatory and dispositional phases of the abuse and neglect case. Prior to accepting an offer of voluntary termination of parental rights, a reviewing court must conduct the hearings required by West Virginia Code §§ 49–6–2 and 49–6–5.

Syl. pt. 9, *In re T.W.*, 230 W. Va. 172, 737 S.E.2d 69 (2012).

13

On appeal, Morgan Y. posits that regardless of her relinquishment of her parental rights, the court must take additional action, including completing the adjudicatory and dispositional phases of this proceeding. We agree that the courts cannot avoid the adjudicatory and dispositional phases of an abuse and neglect proceeding simply because a parent has voluntarily relinquished his or her rights. We reverse and remand this case because the circuit court did not conduct these hearings and make these determinations.

Nevertheless, we find it necessary to now address the practical and legal effect of a parent's voluntary relinquishment during a pending abuse and neglect proceeding in light of the *T.W.* holding. Seventeen years ago this Court undertook a careful analysis of the Fifth Amendment privilege against self-incrimination and the competing interests of the protection of children against abusive and neglectful parents. In *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 475 S.E.2d 865 (1996), we addressed a situation where the accused parents of abused and neglected children refused not only to testify on their own behalf, but further failed to present any evidence in their own defense. We found that "[t]here is no basis in law for requiring that a court be disallowed from consideration of a parent's or guardian's choice to remain silent as evidence of civil culpability." *Id.* at 497. 485 S.E.2d at 873. As a result, we held that

> [b]ecause the purpose of an abuse and neglect proceeding is
> remedial, where the parent or guardian fails to respond to
> probative evidence offered against him/her during the course

14

of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *Doris S., supra.*  We found support for this holding in the United States Supreme Court case of *Baxter v. Palmigiano,* 425 U.S. 308 (1976), which recognized,

> "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.'" *Baxter* at 318, 96 S.Ct. at 1558 (quoting 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)); s*ee* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 5–2(B)(1) (3rd ed.1994).
> \

*Id*. at 498, 475 S.E.2d at 874.  We further agreed with the *Baxter* Court's conclusion that "'in proper circumstances silence in the face of *accusation* is a relevant fact not barred by the Due Process Clause.'"  *Doris S*., 197 W. Va. at 498, 475 S.E.2d at 874 (emphasis added).[5]  Moreover, as the Supreme Court further recognized in *Hale*, *supra*, "[f]ailure to contest an assertion . . . is considered evidence of acquiescence . . . if it would have been

---

[5] *See Baxter* at 319, 96 S.Ct. 1558, citing *Adamson v. California*, 332 U.S. 46, (1947); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–154, (1923); *Raffel v. United States*, 271 U.S. 494, (1926); *Twining v. New Jersey*, 211 U.S. 78, (1908). *United States v. Hale*, 422 U.S. 171, 176–177 (1975); *Gastelum-Quinones v. Kennedy*, 374 U.S. 469, 479 (1963); *Grunewald v. United States*, 353 U.S. 391, 418–424, (1957).

15

natural under the circumstances to object to the assertion in question." *U. S. v. Hale*, 422 U.S. 171, 176, 95 S Ct. 2133 at 2136.[6]

We revisited the issue in the context of purported Fifth Amendment violations relative to a parent's assertion of a vigorous defense in an abuse and neglect proceeding in *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). In *Daniel D.,* the Court addressed the argument that a parent is confronted with a "Hobson's choice" when compelled to participate in civil abuse and neglect proceedings when criminal charges are pending. The Court re-examined the analysis in *Doris S.* and, finding support in other jurisdictions, concluded that our holding in *Doris S.* was "soundly supported by the authorities and is consistent with the policy of this State which encourages prompt hearing of abuse and neglect cases and a paramount concern for the best interests of the children involved in such proceedings." *Daniel D.,* 211 W. Va. at 87, 562 S.E.2d at 155.

As such, we now hold that where during the pendency of an abuse and neglect proceeding, a parent offers to voluntarily relinquish his or her parental rights and such relinquishment is accepted by the circuit court, such relinquishment may, without

---

[6] *See* 3A J. Wigmore, Evidence s 1042 (Chadbourn rev. 1970):

> Silence, omissions, or negative statements, as inconsistent: (1) Silence, etc., as constituting the impeaching statement. A failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. This is conceded as a general principle of evidence.

further evidence, be used as the basis of an order of adjudication of abuse and neglect by that parent of his or her children.

> As well-stated by the New Jersey Superior Court,
>
> There is no mandatory requirement that [a parent] take the stand and testify. That would be unconstitutional. The constraint upon respondent to give testimony arises here simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution[.]

*New Jersey Division of Youth and Family Services v. S.S.*, 645 A.2d 1213 (1994). The *S.S.* court astutely observed that "[i]t may be a difficult decision for the respondents and their attorneys. [But] it is a question of procedure and legal options for the defense, not one of the constitutionality of incrimination[.]" *Id*. at 1217. Likewise, we do not find ourselves overly concerned that our rule will result in accused parents' refusal to voluntarily relinquish, where they otherwise may spare the State the time and resources necessary to adjudicate. The perceived risks attendant to proceeding to adjudication, which may otherwise compel a parent to voluntarily relinquish, remain. The benefits of avoiding the taking of evidence and asserting a defense by voluntarily relinquishing likewise remain. What is missing is simply the mechanism by which an accused parent may elude adjudication and avoid future Department petitions as to any other, or after-born, children. Moreover, the requirement of adjudication was previously established by this Court in *T.W.*; our decision today simply extends our rationale in *Doris S.* to preserve the utility of voluntary relinquishments during an abuse and neglect proceeding for both

17

an accused parent and the State. All options are still on the table for an accused parent; he or she now simply faces the import of his choices.

We find this rule simply a natural extension of and a marrying of the concepts and analysis contained in *Doris S., Daniel D., and T.W.* As this Court stated in *Daniel D.*, our new rule "simply confronts the accused parent with a choice": one may voluntarily relinquish their parental rights during the pendency of an abuse and neglect proceeding, resulting in an adjudication on the merits which may be used as the basis for a future petition by the Department or one may "offer such evidence as the accused may alone possess to refute the charge of abuse and neglect." *Id.* at 87, 562 S.E.2d at 155. Our new rule in no way creates an impediment to a parent's right to voluntarily relinquish, nor does it denigrate their Fifth Amendment privilege against self-incrimination. Rather, this rule simply reflects the "force of circumstances" that will necessarily result from the adjudication which now results from a voluntary relinquishment of parental rights while that parent is involved in an abuse and neglect proceeding.

Turning now to the facts of the instant case, we find that inasmuch as our new syllabus point 4 established herein establishes greater consequences arising from a voluntary relinquishment, Morgan Y. is entitled upon remand to revisit her decision to voluntarily relinquish her parental rights. In the event Morgan Y. chooses not to

18

voluntarily relinquish, the court should proceed with a full evidentiary hearing.[7]  In the

event Morgan Y. continues to desire to voluntarily relinquish her rights to Marley, the

court must enter an order adjudicating her abusive and neglectful pursuant to W. Va.

Code § 49-6-2.

## C. Post-Termination Visitation

Petitioner next assigns as error the circuit court's refusal to grant her post-

termination visitation.  It is well-established that

> [w]hen parental rights are terminated due to neglect or abuse,
> the circuit court may nevertheless in appropriate cases
> consider whether continued visitation or other contact with
> the abusing parent is in the best interest of the child. Among
> other things, the circuit court should consider whether a close
> emotional bond has been established between parent and
> child and the child's wishes, if he or she is of appropriate
> maturity to make such request. The evidence must indicate
> that such visitation or continued contact would not be
> detrimental to the child's well being and would be in the
> child's best interest.

Syl. pt. 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995).  Although this

Court has not expressly so held, *dicta* in certain cases involving remands on the issue of

post-termination visitation have customarily instructed the lower court to hold a hearing,

receive evidence, and consider arguments of counsel.  *See In re Katie S.,* 198 W.Va. 79,

---

[7] We observe that the Department's amended petition alleged not only that Marley M. was a victim of abuse and neglect because of the alleged abuse of Kyle R. and Blake P., but also because the petitioner was allegedly also a drug abuser and prescription drug addict.

479 S.E.2d 589 (1996) ("On remand, the circuit court should take evidence and hear arguments from all sides on the post-termination visitation[.]"); *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998) ("[T]he circuit court should have taken evidence, heard arguments, and made specific findings of fact on these issues.").

However, we note that in some cases, the facts and circumstances underlying the subject abuse and neglect adjudication may be of such an egregious or aggravated nature that further proceedings on the issue of continued contact with a parent whose rights have been terminated would be an unjustifiable waste of judicial resources. Inasmuch as post-termination visitation has been correctly identified as a right of the child, and not a right of the parent,[8] we find that the circuit court in the exercise of its *parens patriae* power is imbued with the discretion to determine if the totality of the circumstances of the underlying petition and/or evidence renders a hearing and the taking of further evidence unnecessary.

Accordingly, we now hold that a parent whose rights have been terminated pursuant to an abuse and neglect petition may request post-termination visitation. Such request should be brought by written motion, properly noticed for hearing, whereupon the court should hear evidence and arguments of counsel in order to consider the factors

---

[8] *See Christina L.*, 194 W. Va. at 455 n.9, 460 S.E.2d at 701, n.9.

established in Syllabus Point 5, *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995), except in the event that the court concludes the nature of the underlying circumstances renders further evidence on the issue manifestly unnecessary. Here, this was not done. There was no properly noticed motion. Consequently, we also reverse the circuit court's order denying post-termination visitation. Should parental rights be terminated, Morgan Y. may seek post-termination by way of advancing evidence and arguments during a hearing properly noticed upon written motion. Finally, we reiterate our admonishment that post-termination visitation should not be entertained if it would "unreasonably interfere with [a child's] permanent placement." *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996).

## V. CONCLUSION

For the foregoing reasons, the July 10, 2012, order of the Circuit Court of Morgan County is reversed, and we remand to the circuit court for further proceedings as consistent with this opinion.

Reversed and remanded with directions.

21