# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

April 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: K.G.S. & K.L.S.**

**No. 13-1174** (Hardy County 11-JA-27 & 13-JA-24)

## MEMORANDUM DECISION

Petitioner Mother, by counsel J. Stuart Bowers II, and Petitioner Father, by counsel Lary D. Garrett, jointly appeal the Circuit Court of Hardy County's September 30, 2013, order terminating their parental rights to K.G.S. and K.L.S., as well as the November 5, 2013, order denying them post-termination visitation.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Marla Zelene Harman, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioners allege that the circuit court erred in terminating their parental rights because 1) the children's removal from the home was unwarranted and unsupported by the evidence; 2) the parents complied with the terms of the improvement period; 3) evidence suggested that there was a reasonable likelihood the conditions of abuse or neglect could be substantially corrected in the near future; and 4) the evidence supported the parents' ability to care for at least K.G.S. Petitioners also allege that the circuit court erred in denying post-termination visitation because the DHHR failed to establish that visitation would be detrimental to the children's well-being.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners previously had their parental rights involuntarily terminated to two older children. In a prior abuse and neglect proceeding initiated in February of 2011, the DHHR filed an abuse and neglect petition against the parents after their daughter, A.S., sustained a skull fracture which led to accumulation of fluids in her head and a petechial hemorrhage. Medical staff suspected blunt force trauma and possibly shaken baby syndrome. Petitioners stipulated to failing to seek medical attention for the child and were adjudicated as having neglected the child. During the dispositional hearing, the circuit court heard medical testimony questioning whether petitioners were intellectually capable of raising a child, as well as testimony regarding Petitioner

---

[1]Because the children in this matter share the same first and last initial, the Court has included their middle initials for purposes of this memorandum decision.

1

Mother's use of methamphetamine and ecstasy. Ultimately, the circuit court terminated petitioners' parental rights to two children, A.S. and W.M.[2]

In regard to the matter on appeal, the DHHR filed an abuse and neglect petition in November of 2011 alleging aggravated circumstances after learning Petitioner Mother was pregnant with her third child. In December of 2011, the circuit court held a hearing on the petition and ordered Petitioner Mother to receive and comply with prenatal care for the unborn child and submit to weekly drug screens. The circuit court also ordered the multidisciplinary team to convene and schedule a status hearing to monitor petitioners' progress. After status hearings determining that Petitioner Mother was in compliance with the prior order, she eventually gave birth to K.G.S. on June 7, 2012. At that time, the child remained in petitioners' physical care and custody. The circuit court also ordered increased services in the home to assist petitioners in caring for the newborn child.

In July of 2012, the circuit court held an adjudicatory hearing to determine if there had been a substantial change in circumstances since the prior terminations of parental rights. While service providers testified to petitioners' ability to care for the child, neither parent could give a clear explanation as to how A.S., the three-month-old child in the prior abuse and neglect case, sustained a skull fracture. Further, the circuit court had reservations because of a psychological evaluation in the prior case that concluded Petitioner Mother would never be able to safely parent a child. The circuit court granted a continuance in the adjudication so that a new psychological evaluation could be obtained. After obtaining a new evaluation and taking testimony from the evaluator, the circuit court found that petitioners had shown a substantial change in circumstances since the prior involuntary termination of parental rights and awarded both petitioners six-month post-adjudicatory improvement periods.

At a status hearing in January of 2013, it was noted that Petitioner Mother was again pregnant with a due date of June 2013. In April of 2013, the circuit court held a review hearing and extended petitioners' post-adjudicatory improvement periods. However, the guardian expressed concerns over petitioners' ability to care for two infants and requested an updated psychological assessment to determine if Petitioner Mother's mental status had improved after receiving services. The circuit court granted the motion.

In June of 2013, Petitioner Mother gave birth to K.L.S., her fourth child. Shortly thereafter, the DHHR filed a petition for emergency custody of both children after nursing staff reported concerns that petitioners were not adequately feeding K.L.S. without prompting. Additionally, when petitioners brought K.G.S. to the hospital, the child was left strapped in her car seat which was then strapped to a wheelchair. The petition expressed concerns about leaving the child secured instead of allowing her to interact with family. As a result, on June 28, 2013, the DHHR was granted emergency custody of both children.

---

[2]Petitioners appealed this termination of parental rights and this Court affirmed the same. *In re A.S. and W.M.*, No. 11-0930 (W.Va. Supreme Court, Feb. 13, 2012) (memorandum decision).

In July of 2013, the circuit court held a preliminary hearing and heard testimony from nurses and DHHR personnel. Based upon this testimony, the circuit court found good reason to believe the children were in danger of serious harm. In addition, the circuit court accepted the guardian's proffer that K.L.S. has "severe physical problems" which added to petitioners' inability to care for the children. Based upon several of the factors testified to during this hearing, the DHHR then filed a motion to revoke petitioners' improvement periods. That same month, Petitioner Mother underwent an updated psychological evaluation. In August of 2013, the DHHR filed an amended petition to include allegations resulting from the new psychological evaluation.

The circuit court then held an adjudicatory hearing on the new allegations and heard testimony from the mental health professional that conducted Petitioner Mother's most recent psychological evaluation. Following this hearing, the circuit court adjudicated the petitioners of neglect. In September of 2013, the circuit court held a dispositional hearing. Although the circuit court found that the DHHR had "gone above and beyond to try to reunify [the family]," it ultimately terminated petitioners' parental rights because they "simply cannot take care of these children."

In October of 2013, the circuit court held a permanency hearing to consider petitioners' request for post-termination visitation. Although the DHHR had previously recommended quarterly visitation because of a bond between petitioners and K.G.S., the DHHR reversed that recommendation. The circuit court thereafter denied post-termination visitation. It is from the resulting order that petitioners appeal.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court terminating petitioners' parental rights or in denying them post-termination visitation. First, petitioners allege that it was error for the circuit court to transfer

custody of the children to the DHHR following the petition filed on June 28, 2013.[3] Petitioners argue that transfer was improper because they had previously been complying with the terms of their improvement periods and because termination was based upon their cognitive inabilities and impairments. The Court, however, finds no error in this regard.

Petitioners' argument is couched in terms of their prior compliance but wholly ignores the new threats to the children's well-being presented after K.L.S. was born. Despite their prior compliance with the terms of their improvement periods, the record shows that the addition of another infant left petitioners unable to properly parent both children. Pursuant to West Virginia Code §§ 49-6-3(a)(1) and (2), after an abuse and neglect petition is filed, custody may be transferred to the DHHR upon a temporary basis if "[t]here exists imminent danger to the physical well-being of the child," and "[t]here are no reasonably available alternatives to removal of the child."

The record clearly shows that the circuit court was presented with sufficient evidence to believe the children were in imminent danger and that there were no reasonable alternatives to removal. At the preliminary hearing following transfer of custody, the circuit court heard testimony from nurses and DHHR personnel. Both nurses testified that petitioners had to be prompted many times to feed the newborn and that the older child should have been removed from the car seat, but petitioners never complied. Testimony was also presented that K.L.S. spent an atypical amount of time in the nursery instead of in the room with petitioners.

The DHHR also noted that petitioners had recently designated Petitioner Father's sister as their support to assist in the children's care, despite petitioners having previously named this woman as the probable perpetrator of A.S.'s skull fracture in their previous abuse and neglect case. In fact, Petitioner Mother stipulated in the prior case that this individual caused the skull fracture. Further, the circuit court heard testimony that two DHHR employees heard Petitioner Mother tell Petitioner Father to take the older child and run when they went to the hospital to notify petitioners that the children were being removed. This was also overheard by a sheriff's deputy who called 911 to send an Amber Alert in case Petitioner Father acted on this advice. The DHHR also testified to the extensive services offered to petitioners and the fact that the DHHR was not allowed to offer further services, absent a court order, because of the length and volume of prior efforts. In addition, the circuit court accepted the guardian's proffer that the newborn has "severe physical problems" that added to petitioners' inability to care for the children.

It is clear that petitioners were struggling to care for two children despite extensive services and the assistance of hospital staff, and that the children's welfare would have been threatened if they had remained in petitioners' care. Based upon the foregoing, the circuit court

---

[3]According to the record, the DHHR obtained temporary emergency custody of the children on June 28, 2013, by a petition in magistrate court. West Virginia Code § 49-6-3(a) states, in pertinent part, that "[u]pon the filing of a petition, the court may order that the child . . . be delivered . . . into the custody of the [DHHR] . . . for the temporary care of the child pending a preliminary hearing." The record shows that after the magistrate court granted the petition for emergency custody, the circuit court then held a preliminary hearing on the new petition within thirty days, as required by West Virginia Code § 49-6-1(a).

had sufficient evidence upon which to order continued custody with the DHHR following the preliminary hearing, and we find no error in this regard.

Next, petitioners argue that the circuit court erred in terminating their parental rights based upon Petitioner Mother's intellectual incapacities and impairments, and not upon an alleged failure to comply with the terms of their improvement periods. However, the Court finds no error in this regard. Importantly, even if petitioners had fully complied with the terms and conditions of their improvement periods, that, standing alone, would be insufficient to achieve reunification with the children. As we have recently held, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re: B.H. and S.S.*, -- W.Va. - -, 754 S.E.2d 743 (2014).

Further, we have previously held that

> [w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. Pt. 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). Petitioners argue that the DHHR failed to establish that they were incapable of exercising proper parenting skills or sufficiently improving the adequacy of those skills, but that is simply not the case. The circuit court specifically found that the DHHR had provided an "extraordinary amount of services," but that petitioners were unable to "assimilat[e] . . . that knowledge into their parenting routine, resulting in their consequent inability to adequately care for their children." These extensive services included four hours, daily, of in-home parenting services. In fact, the circuit court noted that "[a]ll . . . services have been exhausted and those services can no longer be funded or re-authorized given the objective lack of improvement illustrated by [petitioners] over the years." Despite the services offered, the circuit court found that "little benefit has been derived . . . as illustrated by [petitioners'] failure to apply those skills by the continual exercise of poor judgment concerning [the] children."

In fact, the circuit court found that petitioners "cannot provide a safe environment without constant oversight." It is clear that absent twenty-four hour supervision, petitioners were simply incapable of parenting their children. We have previously found that such extensive services are impossible to provide and not required by our prior holdings. *In re Maranda T.*, 223 W.Va. 512, 518, 678 S.E.2d 18, 24 (2009). In *Maranda T.*, we noted that "the service providers opined that the only way to safely reunite [the child and her mother] would be to place a service provider in the home on a permanent, round the clock, basis. Such services are neither required

by *Billy Joe M.* nor would further services benefit a permanent placement finding for Maranda." *Id*. 223 W.Va. at 519, 678 S.E.2d at 25.

While petitioners argue that termination was too restrictive because Petitioner Father could have helped overcome Petitioner Mother's intellectual impairments by assisting in childcare and because they could have, at least, appropriately parented K.G.S., the Court finds no merit in this argument. The circuit court's dispositional order clearly addresses both parent's failure to properly parent both children, and the Court cannot speculate as to whether or not "[p]etitioners were on track to have the minor child, K.G.S., returned to their full custody at the conclusion of the improvement period" had they not given birth to K.L.S., as they argue in their brief. Specifically, the circuit court found that both parents failed to respond to the family case plan and other rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. Pursuant to West Virginia Code § 49-6-5(b)(3), this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be corrected in the near future. The circuit court further found that termination of parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings. As such, it is clear that the circuit court did not err in terminating petitioners' parental rights.

Lastly, the Court finds no error in the circuit court's denial of post-termination visitation. While petitioners acknowledge that they never formed a bond with K.L.S. because she was removed from their custody at birth, they argue that post-termination visitation would have nevertheless been in both children's best interests. This Court does not agree. We have previously held that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

*In re Marley M.*, 231 W.Va. 534, --, 745 S.E.2d 572, 581-82 (2013) (quoting Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995)). In denying post-termination visitation, the circuit court noted the DHHR's concerns regarding Petitioner Mother's "continued emotional instability," as well as the guardian's opposition to visitation because petitioners presented a potential flight risk. Ultimately, the circuit court found that post-termination visitation was not in the children's best interest because Petitioner Mother "has displayed a hostile attitude toward the [circuit c]ourt and the foster parent," and because placing the children in that environment would be "emotional, at best." For these reasons, it was not error to deny petitioners post-termination visitation.

For the foregoing reasons, the September 30, 2013, order terminating petitioners' parental rights to K.G.S. and K.L.S., and the November 5, 2013, order denying them post-termination visitation are hereby affirmed.

Affirmed.

**ISSUED**: April 28, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II