# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **R.M.**,

**No**. **16-0917**    (Tucker County 16-JA-16)

**FILED**

**May 31, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father, Jeffrey M., and Petitioner Mother, Tammie M., parents to R.M., by respective counsel Christopher M. Wilson and David B. DeMoss, appeal an August 30, 2016, order following an adjudication and dispositional hearing by which the Circuit Court of Tucker County disposed of a child abuse and neglect proceeding.[1]  In its order, the circuit court accepted Jeffrey and Tammie M.'s voluntary relinquishment of custodial rights to R.M., and, as consented to by Jeffrey and Tammie M., transferred permanent guardianship of R.M. to his paternal grandparents.  They argue the circuit court erred by: (1) adjudicating that they abused and neglected R.M.; and (2) placing restrictions on their visitation with him.  The West Virginia Department of Human Resources (DHHR), by counsel Lee Niezgoda, filed a response in support of the circuit court's order.  The guardian ad litem, Allison C. Iapalucci, also filed a response on behalf of the child in support of the circuit court's order.  Jeffrey and Tammie M. filed a reply to the DHHR's and the guardian ad litem's responses.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, oral arguments, and the record presented, we find no substantial question of law and no prejudicial error.  For this reason, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a petition filed by the DHHR alleging that Jeffrey and Tammie M. abused and neglected their twelve-year-old son, R.M.  In its petition, the DHHR claimed that Jeffrey M. regularly subjected Tammie M. to severe physical abuse in front of R.M. and that Tammie M. habitually abused drugs and alcohol in R.M.'s presence.  The petition further alleges that Jeffrey and Tammie M.'s home has been the site of multiple 911 calls for domestic violence, substance abuse, and threatened suicide.  Despite Jeffrey and Tammie M.'s purportedly turbulent relationship, they had not followed through on a divorce by the time the DHHR filed its petition, and R.M. remained in their family home.

---

[1] Because R.M. is a child, we identify him by his initials and his parents by their last name initial. *See In re Aaron H*., 229 W.Va. 677, 679 n.1, 735 S.E.2d 274, 276 n.1 (2012). *See also* W.VA. R.APP. P. 40(e)(1).  Moreover, even though Jeffrey M. and Tammie M. are represented by separate counsel, we refer to them collectively for the reader's convenience and because their arguments in this appeal are the same.

The circuit court scheduled an adjudicatory hearing to determine whether R.M. had been abused and neglected as alleged in the DHHR's petition. On the day of the adjudicatory hearing, counsel for the parties met to discuss a voluntary disposition of the child abuse and neglect proceeding. At this meeting, it was agreed that Jeffrey and Tammie M. would voluntarily relinquish their custodial rights to R.M. and consent to the permanent guardianship of R.M. by his paternal grandparents. The circuit court was informally notified of the proposed voluntary dispositional plan before the adjudicatory hearing.

At the hearing, the circuit court directed inquiries to Jeffrey and Tammie M. as to whether their proposed voluntary relinquishment of custodial rights to R.M. was freely, knowledgeably, and voluntarily given. It also inquired of R.M.'s paternal grandparents, who were present at the hearing, about their fitness to be R.M.'s permanent guardians. The circuit court then accepted Jeffrey and Tammie M.'s dispositional plan to voluntarily relinquish their custodial rights to R.M. and to transfer permanent guardianship of R.M. to his paternal grandparents. The circuit court also made the following two findings at the hearing: (1) Jeffrey and Tammie M.'s voluntary relinquishment of custodial rights would serve as a basis for an abuse and neglect adjudication; and (2) any visitation Jeffrey and Tammie M. may have with R.M. must occur at his guardians' home, and Jeffrey and Tammie M. may not visit R.M. at the same time. Jeffrey and Tammie M. did not object to either of these findings during the hearing.

Following the hearing, the circuit court entered an order accepting Jeffrey and Tammie M.'s voluntary relinquishment of custodial rights to R.M., transferring permanent guardianship of R.M. to his grandparents, and containing its two findings regarding the abuse and neglect adjudication and visitation. It is from that order that Jeffrey and Tammie M. appeal.

In evaluating a circuit court's resolution of a child abuse and neglect proceeding, we apply the following standard of review:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

2

Jeffrey and Tammie M. first argue that the circuit court erred by adjudicating them to have abused and neglected R.M. They assert that, instead, the circuit court should have accepted their voluntary dispositional plan without addressing the issue of abuse and neglect.

Jeffrey and Tammie M.'s argument directly contradicts our holding in Syllabus Point 2 of *State v. T.C.*, 172 W.Va. 47, 303 S.E.2d 685 (1983), in which we held:

> W. Va. Code, 49-6-1, *et seq.*,[2] does not foreclose the ability of the parties, properly counseled, in a child abuse or neglect proceeding, to make some voluntary dispositional plan. However, such arrangements are not without restrictions. First, the plan is subject to the approval of the court. Second, and of greater importance, the parties cannot circumvent the threshold question which is the issue of abuse or neglect.

(Footnote added). Therefore, the circuit court was required to address whether Jeffrey and Tammie M. abused or neglected R.M. Had the circuit court failed to do so, as Jeffrey and Tammie M. suggest it should have done, it would have erred under our holding in Syllabus Point 2 of *T.C.*

Moreover, a parent's voluntary relinquishment of rights to his or her child is a sufficient basis for an abuse or neglect adjudication. In Syllabus Point 4 of *In re Marley M.*, 231 W.Va. 534, 745 S.E.2d 572 (2013), we held:

> Where during the pendency of an abuse and neglect proceeding, a parent offers to voluntarily relinquish his or her parental rights and such relinquishment is accepted by the circuit court, such relinquishment may, without further evidence, be used as the basis of an adjudication of abuse and neglect by that parent of his or her children.

The rationale behind our holding in *Marley M.* was to protect the best interests of the children who are the subject of the abuse and neglect proceeding and also to protect the interests of other children who may thereafter be abused or neglected by the accused parent.[3] That goal would be

---

[2] West Virginia Code § 49-6-1, *et seq.*, was recodified as West Virginia Code § 49-4-601, *et seq.*, in 2015. The Legislature's recodification of the procedure in child abuse and neglect proceedings does not affect the outcome of this appeal.

[3] *See In re T.W.*, 230 W.Va. 172, 180, 737 S.E.2d 69, 77 (2012) (stating, as to a circuit court's failure make an abuse or neglect adjudication: "[G]reivious allegations of abuse were raised, and the potential still exists for future visitation between [the father] and the two children for which his parental rights were not terminated. The granting of a consensual termination of parental rights without . . . finding with regard to the best interests of *all four* of these children is [error.]") (emphasis in original). *See also T.C.*, 172 W.Va. at 50, 303 S.E.2d at 687 ("The

3

thwarted by a "mechanism by which an accused parent may elude adjudication and avoid future Department petitions as to any other, or after-born, children." *Id.*, 231 W.Va. at 543, 745 S.E.2d at 581.

Therefore, an accused parent in an abuse or neglect proceeding has two choices regarding a voluntary relinquishment of rights to his or her child: (1) "voluntarily relinquish their parental rights[,] . . . resulting in an adjudication on the merits which may be used as the basis for a future petition by the Department[;]" or (2) "offer such evidence as the accused may alone possess to refute the charge of abuse and neglect." *Id.*, 231 W.Va. at 543, 45 S.E.2d at 581, *quoting In re Daniel D.*, 211 W.Va. 79, 87, 562 S.E.2d 147, 155 (2002). Jeffrey and Tammie M. were afforded an adjudicatory hearing, at which they had an opportunity to offer evidence refuting the allegations against them of abuse and neglect. They chose not to do so; therefore, they must bear the consequences of the circuit court's adjudication.[4]

Jeffrey and Tammie M. attempt to distinguish our holding in *Marley M.* by noting that they relinquished their *custodial* rights, as opposed to their *parental* rights, to R.M. However, the rationale we used for our holding in *Marley M.* is equally applicable to this case. As in all child abuse and neglect proceedings, the circuit court was required to adjudicate whether Jeffrey and Tammie M. abused and neglected R.M. Furthermore, by relinquishing their custodial rights to R.M., Jeffrey and Tammie M. attempted to do the very thing this Court prohibited in *Marley M.*, that is, using a voluntary relinquishment of rights to elude adjudication and avoid Department petitions as to any other children.[5]

Therefore, we find no error in the circuit court using Jeffrey and Tammie M.'s voluntary relinquishment of custodial rights to R.M. as a basis for an adjudication that they abused and neglected R.M.

Jeffrey and Tammie M. also argue that the circuit court erred by placing restrictions on their visitation with R.M, that being, they may visit with him only at his guardians' house, and they may not visit him at the same time. They claim that when they discussed the issue of visitation with the circuit court prior to the adjudicatory hearing, it was agreed they would be able to visit with R.M. at the same time. The record does not support their claim. Counsel for

---

primary purpose of making an initial finding of abuse or neglect is to protect the interests of all parties[.]").

[4] As we held in *W.Va. Dep't. of Health & Human Res. v. Doris S.*, "[W]here the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability." Syl. Pt. 2, in part, *Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996).

[5] Jeffrey and Tammie M. admit in their brief to this Court that they "chose not to take the risk of a possible adjudication, so that is why they consented to [the voluntary relinquishment] and the guardianship – in exchange for dismissal[.]"

neither parent objected when the circuit court stated at the hearing that it would place restrictions on their visitation with R.M., and counsel for Tammie M. stated during the adjudicatory hearing: "we definitely understand that mom and dad cannot participate in visitation together."

Moreover, the circuit court did not err under Rule 15 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides the standard for determining post-relinquishment visitation:

> If at any time the court orders a child removed from the custody of his or her parent(s) and placed in the custody of . . . some other responsible person, the court may make such provision for reasonable visitation . . . as is consistent with the child's well-being and best interests. The court shall assure that any supervised visitation . . . shall occur in surroundings and in a safe place, dignified, and suitable for visitation, taking into account the child's age and condition. . . . In determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interests.

In restricting Jeffrey and Tammie M.'s visitation with R.M., the circuit court required that visitation take place in surroundings which were safe, dignified, and suitable for visitation, that is, the home of R.M.'s guardians. Furthermore, the circuit court considered whether or not granting visitation without restrictions would be in the child's best interests. The circuit court, citing Jeffrey and Tammie M.'s purportedly turbulent history together, determined that it would be in R.M.'s best interests if Jeffrey and Tammie M. visited him separately. We find no error in the circuit court's visitation restrictions.

For the foregoing reasons, we find no merit in Jeffrey and Tammie M.'s assignments of error, and its August 30, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 31, 2017

**CONCURREDIN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker