**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.H., J.H., and S.H.**

**No. 21-0381** (Hampshire County 19-JA-46, 19-JA-47, and 19-JA-48)


**MEMORANDUM DECISION**


Petitioner Father T.P., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's March 25, 2021, order terminating his parental rights to H.H., J.H., and S.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Julie A. Frazer, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for a competency evaluation and refusing to permit him leave to file a motion for post-termination visitation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner improperly supervised the children, who have special needs, which resulted in then eighteen-month-old S.H. being hospitalized after overdosing on prescription medication. The petition set forth that when petitioner and the mother arrived at the hospital with the child "both [were] apparently intoxicated and making no sense." The parents reported that the child ingested the medication two days prior. According to the petition, if the parents had waited any longer to seek

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not assign as error the circuit court's termination of his parental rights to the children.

treatment, the child could have died. The DHHR alleged that the parents changed their stories about how the child obtained the medication, which the parents initially said belonged to the mother. Petitioner first stated that he witnessed the child "getting into the drugs two days ago and he figured [the child] was fine just sleeping really good." The parents then said that they witnessed the other children crushing the pills on a table and leaving them there, before later explaining that the pills actually belonged to the children's grandmother, who also lived in the home. Upon investigating, the DHHR spoke with the grandmother, who reported that the mother "intentionally left her medication out for the children to find and overdose on." It was also reported that this was the second time the child had been treated for an overdose in a three-month period. Upon receiving medical records from the hospital, it was confirmed that the child overdosed on a benzodiazepine on July 15, 2019, and a tricyclic antidepressant on September 1, 2019. Following the child's admission in September of 2019, he was in critical condition and had to be transported to the Pediatric Intensive Care Unit at Ruby Memorial Hospital. Based on the child's repeated overdoses and the parents' decision to wait two days to seek treatment, despite observing the child's somnolence and lethargy, the DHHR alleged that the parents engaged in child abuse and/or neglect. Petitioner thereafter waived his right to a preliminary hearing.

Following the petition's filing, the parties participated in a multidisciplinary team ("MDT") meeting on October 4, 2019. According to the minutes for this meeting, petitioner was admonished for his "out of control" posts to social media about the case. Petitioner indicated that he was unaware that he could not make information about the case public and indicated he would not do so moving forward. Petitioner also stated that he had done nothing wrong, as he was asleep both times the child overdosed. According to the meeting minutes, petitioner raised his voice and stated that he was being blamed for something he did not do. Petitioner was then asked to leave.

That same month, petitioner stipulated to the allegations against him, and the court adjudicated him as an abusive and/or neglectful parent. During the adjudicatory hearing, the guardian strongly objected to petitioner having visits with the children, which the DHHR had already suspended. The guardian based this objection on (1) petitioner's behavior at a recent MDT meeting; (2) his inappropriate statements to the children during visits; (3) his failure to provide necessary supplies, such as diapers, at visits; (4) the fact that H.H. displayed negative behavior at school following visits; (5) J.H. soiling himself the night prior to the last four visits; and (6) petitioner's failure to provide proper food to the children during visits, as evidenced by his providing an ice cream cone for dinner to a lactose intolerant child. The DHHR agreed that petitioner's visits should remain suspended. Based on these objections, the court ordered the MDT to convene and determine the circumstances under which petitioner could receive visits and that, if an agreement could not be reached, petitioner's visits would remain suspended pending the next hearing. The court also admonished petitioner for his behavior during the MDT meeting and ordered that he submit to a drug screen. Petitioner informed the court that he would likely test positive for THC, although he claimed not to have abused the drug since his last drug screen.

In November of 2019, petitioner underwent a psychological evaluation that did not result in any concerns about mental illness. In December of 2019 and January of 2020, the court heard evidence regarding disposition and held petitioner's motion for visits with the children in abeyance. At the January of 2020 hearing, the court took petitioner's motion for an improvement period under advisement. Later that month, the court issued an order granting petitioner a post-

adjudicatory improvement period based, in part, upon his ongoing participation in anger management and counseling, services that petitioner obtained on his own. The court further noted that petitioner had not tested positive for any drugs since he tested positive for marijuana at the adjudicatory hearing.

On March 6, 2020, the DHHR filed a report that detailed a recent safety check on petitioner's home. After four attempts to gain access, the DHHR and MDT members found numerous unsafe conditions in the home, including medications that would have been in easy reach of the children, full alcohol containers on the floor, sexual enhancement pills and pornography in a box on the floor, a gun in a soft case on the floor, and liquor on the bottom shelf in the door of the refrigerator. The DHHR asserted that the home was in this condition despite the fact that petitioner was aware that a safety check would be conducted. According to the DHHR, petitioner made no effort to correct the unsafe conditions in the home that necessitated the children's removal.

Later in March of 2020, the circuit court held a hearing, during which the DHHR expressed its continued objection to petitioner receiving an improvement period. According to the DHHR, it received a letter from the individual providing therapy for H.H., who stated that it was his professional opinion that the child was displaying negative emotional experiences when he saw petitioner. The guardian and DHHR then moved to again suspend petitioner's visitation with the children due to their adverse reactions. The court granted the motion to suspend visits.

In June of 2020, the DHHR filed a motion to terminate petitioner's improvement period on the basis that both children were having behavioral problems at school. Specifically, H.H. was "starting to be more aggressive at school" and the worst instances occurred the day after visits with petitioner. Similarly, J.H. expressed displeasure over attending visits and questioned whether the children were required to see petitioner. The DHHR reiterated the opinion of H.H.'s therapist, who suggested that the child would benefit from a break in visits. The DHHR also pointed to the conditions of petitioner's home during the recent emergency check, which caused the DHHR to believe that petitioner was unable or unwilling to maintain a safe home environment. Based on these issues, the DHHR alleged that it was detrimental for the children to be returned to petitioner's home and that petitioner lacked the insight necessary to remedy the conditions of abuse and neglect. However, at a hearing on the DHHR's motion later that month, the DHHR indicated that it was withdrawing the motion because of a disruption in the children's foster placement. The court then granted petitioner a post-dispositional improvement period.

In September of 2020, the court held a review hearing, at which time the DHHR indicated that, although petitioner was participating in services, the visitation supervisor informed the DHHR that petitioner's last visit with the children was "chaotic" and that petitioner did not know how to discipline the children. Despite the circuit court finding at a status hearing in October of 2020 that petitioner's visits with the children had improved, the DHHR filed a report in December of 2020 that indicated the children were "struggling with increased behaviors after visits." The DHHR further noted that by this point, the children had been out of the home for fifteen months. According to the DHHR, even after the safety check in October of 2020 that showed continued unsafe conditions, petitioner showed "a complete lack of insight." As such, the DHHR requested that the matter be set for disposition.

3

In January of 2021, petitioner's visitation was suspended after he missed a series of scheduled visits. The record shows that the children travelled approximately forty minutes each way to attend the visits, which petitioner failed to attend. According to the DHHR, petitioner was also unresponsive to his parenting and adult life skills provider during the period in which he missed these visits. Later that month, the court held a dispositional hearing and heard testimony from petitioner's service providers before ultimately continuing the hearing. The court also heard testimony from petitioner's counselor, who indicated that petitioner suffered a mental breakdown in December of 2020 that was "completely out of character." According to the counselor, petitioner worked with him on the issue, and after having spoken with petitioner the day before the hearing the counselor indicated "it appears [petitioner] is back to being normal." Petitioner also testified to this episode, indicating that he could not remember exactly what happened during this time and he was not thinking clearly. Petitioner indicated, however, that he remained employed throughout this period and was able to communicate with his employer to call off work.

In March of 2021, the DHHR filed a report indicating that petitioner had recently been arrested "for two different domestic situations towards his mother" and that he attempted to assault law enforcement during both altercations. According to the DHHR, "[t]he first incident involved a machete." That same month, petitioner filed a motion for a psychological evaluation "to aid the court in determining an appropriate disposition in this matter." Petitioner also filed a motion to have a guardian ad litem appointed for him due to his incarceration and mental state. Finally, petitioner filed a "Motion for Post-Termination Visitation, or, in the Alternative, if Not Granted, Motion to Leave Open the Right for the Respondent to Petition the Court at a Later Date for Post-Termination Visitation." This motion was filed in the event that the court terminated petitioner's parental rights at the continued dispositional hearing.

On March 11, 2021, the court held a hearing, during which law enforcement personnel testified to petitioner's recent arrests and the DHHR introduced evidence confirming the charges against him. According to the officers, petitioner admitted to having abused marijuana prior to one incident, and marijuana was found in the residence. According to the officers, petitioner's issues appeared "to be more due to illicit substance use than mental health related." The court then denied petitioner's motions for an evaluation and the appointment of a guardian but held his motion for post-termination visitation in abeyance. At the conclusion of the hearing, the court indicated that an order on disposition would be forthcoming. Counsel for petitioner then stated that "maybe it's not appropriate now, but I am always concerned at the dispositional stage, I mean, when, if his rights are terminated, I should make a motion for post-termination visitation." The court then asked, "Do you want to make that now?" Counsel then indicated that he "guess[ed] it would be deferred, I mean, because you haven't ruled on" disposition. The court then indicated that it would "certainly hear from you, if you want to address that today, or if you want to put it in writing for me to consider, I will let you do that." Counsel then moved "the court to leave open the right for him to petition at a later date for post-termination visitation . . . because if his rights are terminated—of course, under the law he wouldn't have standing so—but I have heard of judges leaving that open." At that point, the court indicated that, although it did not believe that such a motion was appropriate, it "will consider it . . . [i]f you want to supplement and file a written motion on why you believe he should have that right, . . . then I will give you leave to do that." The court then explained that such a motion would need to be filed within ten days.

4

Ultimately, the court issued its order terminating petitioner's parental rights on March 25, 2021. In terminating petitioner's parental rights, the court found it troubling that petitioner alleged he was unable to contact his visitation providers during his mental breakdown in order to cancel visits but was able to inform his employer that he would not appear for work. The court also noted petitioner's continued substance abuse, his recent arrests, and his inability to sufficiently correct the conditions of abuse and neglect. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. As such, the court terminated petitioner's parental rights.[3] The court also denied post-termination visitation between petitioner and the children, finding that it would be detrimental to the children. The court further denied petitioner's request for leave to later file a motion for post-termination visitation should there be a change of circumstances in the future. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying his motion for a mental evaluation and appointment of a guardian ad litem after he had a mental breakdown in December of 2020 and displayed bizarre behavior during his arrests thereafter. Petitioner fails, however, to include any authority that would have required the circuit court to order a second psychological evaluation based on petitioner's conduct. Instead, petitioner simply cites a prior decision from this Court in which we indicated that circuit courts have "inherent discretion in ordering such evaluations." *In re L.B.*, 20-0203, 2020 WL 5652429, at *4 (W. Va. Sept. 23, 2020)(memorandum decision). Petitioner argues that the court abused its discretion, but we disagree given the extensive evidence both before and after the incidents in question that demonstrated an additional evaluation and a guardian were unnecessary.

---

[3]The mother voluntarily relinquished her parental rights during the proceedings below. The permanency plan for the children is adoption in the current foster home.

As set forth above, petitioner's initial psychological evaluation did not contain any concerns about mental illness. Further, petitioner testified at the January of 2021 hearing following his mental breakdown that the episode lasted "[p]robably about two weeks" but that he did not believe there was a possibility of another breakdown. Additionally, petitioner's therapists testified at the January of 2021 hearing that petitioner had corrected the situation and was "back to the [individual] that [he] had worked with prior." As such, there was no evidence in the record following petitioner's mental breakdown to suggest that he required an additional evaluation or a guardian. Further, the fact that petitioner displayed what he describes as bizarre behavior during his arrests in March of 2021 is insufficient to entitle him to relief. According to the record, petitioner admitted to abusing a controlled substance prior to at least one of the arrests, leading the court to find that petitioner's behavior was "more due to illicit substance use than mental health related." Accordingly, petitioner simply cannot establish an abuse of the circuit court's discretion in denying his motions.

Finally, petitioner argues that the court erred in denying him leave to file a motion for post-termination visitation with the children. This argument, however, is wholly disingenuous and completely unsupported by the record. In support, petitioner cites the following:

> A parent whose rights have been terminated pursuant to an abuse and neglect petition may request post-termination visitation. Such request should be brought by written motion, properly noticed for hearing, whereupon the court should hear evidence and arguments of counsel in order to consider the factors established in Syllabus Point 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), except in the event that the court concludes the nature of the underlying circumstances renders further evidence on the issue manifestly unnecessary.

Syl. Pt. 5, *In re Marley M.*, 231 W. Va. 534, 745 S.E.2d 572 (2013). Petitioner argues that the circuit court's express denial of his motion for leave to file a motion for post-termination visitation violates this holding, but petitioner ignores the fact that he not only filed a motion for post-termination visitation but that the circuit court expressly instructed petitioner to file an additional motion on the issue at the conclusion of the March of 2020 hearing. Further, the court also invited petitioner to file a motion explaining why he believed he should be entitled to file a motion at some point in the future if he believed that the issue of post-termination visitation should be revisited. In short, the record does not support petitioner's assertion that he was denied the right to file a motion for visitation.

In denying petitioner's request for post-termination visitation, the court found that such continued contact would be detrimental to the children. This finding was based on voluminous evidence of the negative impact that visitation with petitioner had on the children throughout the proceedings. Accordingly, we find no error in the denial of petitioner's motion for post-termination visitation. Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (holding that post-termination visitation should only be granted when "[t]he evidence . . . indicate[s] that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest"). Further, insomuch as the court refused to grant petitioner leave to file a motion for post-termination visitation in the future, *Marley M.* does not stand for the proposition

6

that a parent can wait indefinitely before filing such a motion in the distant future at a time when a child may have already achieved permanency. As such, petitioner is entitled to no relief in regard to this assignment of error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 25, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton