IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-625

_____

**FILED**

**February 26, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* H.M.

_____

Appeal from the Circuit Court of Jefferson County
Honorable Bridget Cohee, Judge
Civil Action No. CC-19-2022-JA-32

AFFIRMED, IN PART, VACATED, IN PART, AND
REMANDED WITH DIRECTIONS

_____

Submitted: January 15, 2025
Filed: February 26, 2025

Jonathan T. O'Dell, Esq.
Assistant Public Defender
Public Defender Corp., 23rd Cir.
Martinsburg, West Virginia
Attorney for Petitioner, C.M.


Daja K. Elliott, Esq.
ChildLaw Services, Inc.
Guardian ad Litem
Martinsburg, West Virginia

John B. McCuskey, Esq.
Attorney General
Spencer J. Davenport, Esq.
Assistant Solicitor General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for DHS

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.'  Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)."  Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.      "At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child."  Syl. Pt. 6, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

**ARMSTEAD, Justice:**

In this abuse and neglect proceeding, petitioner C.M.,[1] the biological aunt and adoptive mother of H.M., appeals the September 27, 2023, dispositional order entered by the Circuit Court of Jefferson County that placed H.M. in a subsidized legal guardianship with her foster mother, A.H. Petitioner contends that the circuit court erred by finding that she did not satisfy the terms of her post-adjudicatory improvement period and by refusing to reunify her with H.M. She further asserts that the circuit court's dispositional order does not comply with West Virginia Code § 49-4-604(c)(5) (2020).[2] Having considered the parties' briefs and oral arguments, the submitted appendix record, and pertinent authorities, we find that the circuit court did not abuse its discretion when it determined that petitioner failed to substantially comply with the terms of her improvement period and placed H.M. in a legal guardianship with her foster mother. However, because of errors and inadequacies in the dispositional order, we find it necessary to affirm, in part, and vacate, in part, the circuit court's order and remand this case for further proceedings as necessary for entry of a corrected dispositional order in accordance with the applicable statutory provisions and caselaw as set forth in this opinion.

---

[1] We use initials instead of full names to protect the identities of the juveniles involved in this case. *See* W. Va. R. App. Proc. 40(e).

[2] The relevant statutory language is set forth herein.

1

## I. Facts and Procedural Background

In 2015, the parental rights of the biological parents of H.M., and her brother, B.M., were terminated during an abuse and neglect proceeding. The children were then adopted by petitioner. In 2019, the children were removed from petitioner's home during a second abuse and neglect proceeding arising from petitioner's substance abuse. Petitioner successfully completed an improvement period, and the children were returned to her custody. In April 2022, the Department of Human Services ("DHS")[3], respondent herein, received three new referrals indicating that petitioner had suffered a relapse. It was also reported that the family was homeless and was regularly staying with a couple who abused drugs. Before DHS could institute a third abuse and neglect proceeding, petitioner placed H.M. in a guardianship with A.H., who was H.M.'s foster mother during the 2019 case; placed B.M. in a guardianship with petitioner's adult son who resides in Tennessee; and entered a rehabilitation facility.

DHS filed the abuse and neglect petition in this proceeding on May 27, 2022. Because the children had been previously placed in guardianships, the circuit court did not order their removal, finding it in their best interests to remain with their guardians. An

---

[3] Pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS"). Because a new attorney general took office while this appeal was pending, his name has been substituted as counsel for DHS.

adjudicatory hearing was held on July 15, 2022, at which time petitioner stipulated to "abusing drugs and/or alcohol to the extent that her proper parenting skills have been compromised" and to "knowingly and intentionally us[ing] and abus[ing] illegal substances in the presence of the infants." Thus, the circuit court found the children to be abused and neglected.

Following a hearing on September 12, 2022, the circuit court granted petitioner a post-adjudicatory improvement period. By that time, petitioner had completed a twenty-eight-day treatment program at a rehabilitation facility and had entered a sober living program. In February 2023, petitioner was granted a three-month extension of her improvement period. However, two months later, the guardian ad litem ("GAL") filed a motion to terminate petitioner's improvement period due to her lack of progress in maintaining stable employment and housing. The GAL also noted that petitioner had tested positive for fentanyl during a March 2, 2023, drug screen.

At a review hearing held on April 24, 2023, petitioner tested positive for oxycodone. During that hearing, the GAL and CASA[4] advised the circuit court that petitioner "appears to have reached a plateau" with respect to her progress towards

_____

[4] CASA is the acronym for Court Appointed Special Advocate. Rule 52(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings allows circuit courts to appoint CASA representatives in abuse and neglect proceedings "to further the best interests of the child until further order of the court or until permanent placement of the child is achieved."

3

reunification. At the end of the hearing, the circuit court scheduled the case for disposition. Thereafter, petitioner agreed that B.M.'s guardianship should be permanent and waived her right to a contested dispositional hearing regarding B.M. Consequently, the circuit court dismissed B.M. from the case.

Dispositional hearings were held regarding H.M. on July 27, August 28, and September 11, 2023. Notably, at the first hearing, the circuit court ordered petitioner to take a drug test, and it was positive for noroxycodone. During the hearings, the GAL and DHS sought termination of petitioner's parental rights and presented testimony from petitioner's life coach, Vickey Wilcher, who testified that petitioner was unable to meet the two primary goals of her improvement period which were to secure housing and employment. Ms. Wilcher explained that petitioner was now working at her fifth job since the proceeding began and was living with a roommate in a one-bedroom apartment with a month-to-month lease. Petitioner testified on her own behalf and denied any drug use during the case. Petitioner also claimed that her name was on the lease of the apartment where she was living, but she never produced documentation to establish that fact despite being asked to do so. Petitioner did admit that the lease term was month-to-month and could be terminated by her landlord at any time.

At the conclusion of the final hearing, the circuit court determined that disposition under West Virginia § 49-4-604(c)(5) was appropriate and ordered that H.M. be placed in a legal guardianship with A.H. The circuit court reasoned:

4

I don't know how long it is going to take [C.M.] to be able to fully care for this child. I'm not saying that it won't ever happen. It might happen, but it is not now.

So to the extent that we need to have permanency for this child I'm going to find that [C.M.] did not substantially comply to the point where it is in the best interest of for [sic] [H.M.] and that [H.M.] deserves that permanency so I'm going to grant legal guardianship to A.H.

The final disposition order was entered on September 27, 2023, by the circuit court under a newly assigned judge but was based upon the prior dispositional hearings. That order placed H.M. "in the permanent care, custody,[5] and control of [DHS] pending completion of [a] subsidized guardianship." The order also provided that only the GAL or DHS could file a motion for modification of the disposition and dismissed petitioner from the case. Finally, the order afforded petitioner "post-termination visitation" with H.M. at A.H.'s discretion although petitioner's parental rights were not terminated. Upon entry of the order, petitioner filed her appeal with this Court.

## II.  Standard of Review

Our standard of review for abuse and neglect appeals is well established. As set forth in syllabus point one of *In re Cecil T.,* 228 W. Va. 89, 717 S.E.2d 873 (2011):

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These

---

[5] H.M. remained in the physical custody of A.H.

5

findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S*., 196 W.Va. 223, 470 S.E.2d 177 (1996).

With this standard in mind, we consider the parties' arguments.

## III. Discussion

Petitioner first contends that the circuit court erred by finding that she failed to substantially comply with the terms of her improvement period and by refusing to reunify her with H.M. Petitioner points out that before the abuse and neglect petition was filed, she took action to protect the children by placing them in guardianships and by getting treatment for her substance abuse problem through entering a rehabilitation facility. She then continued to get treatment for her substance abuse after the petition was filed. Petitioner denies using any illegal substances while the proceeding was ongoing, noting that early in the case, one of her test results was determined to be a false positive. She argues that when other tests came back positive during the proceeding, DHS should have ordered further lab testing to determine if those positive results were false as well. Petitioner further claims that she was continuing to try to obtain more suitable housing and that leasing an apartment month-to-month should not have been held against her. She emphasizes that there were never any problems when she visited H.M. and that she

6

expressed a willingness to do anything to improve her parenting skills. She also highlights A.H.'s testimony that the relationship between petitioner and H.M. was very loving and affectionate, and that H.M. viewed petitioner as her caregiver. Petitioner maintains this evidence shows that she substantially complied with her case plan and that it was in H.M.'s best interests to be reunified with her.

Conversely, the GAL and DHS assert that the circuit court did not err in finding that petitioner failed to make substantial progress during her improvement period. They argue that petitioner's claim that she did not abuse drugs during the proceedings below is not supported by the evidence. In that regard, they point to laboratory reports in the record confirming the positive drug screen for fentanyl on March 2, 2023, and the positive test for noroxycodone on July 27, 2023. They also note that, other than the July 27, 2023 test, petitioner did not participate in any drug screens from mid-June 2023 through August 10, 2023. While DHS acknowledges that petitioner submitted a letter from her medical provider indicating she was on bedrest during the month of July 2023, it claims that petitioner missed some screens that were not covered by the dates provided in the letter. DHS further notes that petitioner failed to make substantial progress in obtaining stable employment and housing, both of which were conditions of her case plan. Finally, DHS relates that petitioner retained the adoption subsidy she was receiving for H.M. even though H.M. was no longer in her care and even though one of the terms of her improvement period was that she would contribute to the children's care while they were out of her home to the extent that she was able to do so. Given all this evidence, the GAL

7

and DHS contend that there is no basis to find that the circuit court abused its discretion when it determined that petitioner had not substantially complied with the terms of her improvement period and could not be reunified with H.M.

This Court has made clear that "[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court 'regardless of whether or not the individual has completed all suggestions or goals set forth in family case plans.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *In the Interest of Carlita B.*, 185 W. Va. 613, 626, 408 S.E.2d 365, 378 (1991)). As we have explained:

> The improvement period is granted to allow the parent an opportunity to remedy the existing problems. The case plan simply provides an approach to solving them. As is clear from the language of the statute,[6] . . . the ultimate goal is restoration of a stable family environment, not simply meeting the requirements of the case plan.

*West Virginia Dep't of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990) (footnote added); *see also* syl. pt. 4, *In re B.H. and S.S.*, 233 W. Va. 57, 754 S.E.2d 743 (2014) ("In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is

---

[6] *See* W. Va. Code § 49-4-408 (2024) (requiring development of a case plan when an improvement period is granted and requiring reasonable efforts to "make it possible for a child to return safely home").

8

just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child."). Therefore,

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

*In the Interest of Carlita B.*, 185 W. Va. at 616, 408 S.E.2d at 368, syl. pt. 6.

Upon review of the record, we find that the circuit court did not abuse its discretion in determining that petitioner did not make sufficient improvement to be reunified with H.M. While the record shows that petitioner sought treatment for her substance abuse at the outset of the case, the evidence also indicates that she was still abusing drugs at the time the disposition hearings began. Petitioner argues that her positive drug screens should not have been viewed as reliable given that she had a prior false positive test; however, two of those positive drugs screens were confirmed by subsequent laboratory testing. Notably, one of those tests certified as positive was the drug screen she took at the first disposition hearing. In addition, petitioner was unable to demonstrate that she could provide a safe, stable home for H.M. The record shows that she repeatedly changed jobs throughout her improvement period and could not produce paystubs to verify her current employment when she testified at the disposition hearing. Likewise, she could not produce any documentation to show that her name was on the lease of the apartment

9

where she was residing. Given this evidence, which clearly supports the circuit court's decision, we find no merit to this assignment of error.

Petitioner next argues that the circuit court's order does not comply with West Virginia Code § 49-4-604, which sets forth the disposition alternatives that circuit courts may employ in abuse and neglect proceedings. As discussed above, the circuit court determined that disposition under West Virginia Code § 49-4-604(c)(5)[7] was appropriate

---

[7] West Virginia Code § 49-4-604(c)(5) provides, in relevant part:

> *Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department,* a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court. The court order shall state:
>
> (A) That continuation in the home is contrary to the best interests of the child and why;
>
> (B) Whether or not the department has made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family, or some portion thereof, and to prevent or eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home;
>
> (C) Whether the department has made reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U. S. C. § 12101 et seq., to parents with disabilities in order to allow them meaningful access to reunification and family preservation services;
>
> (D) What efforts were made or that the emergency situation made those efforts unreasonable or impossible; and

and placed H.M. in the "permanent care, custody and control of [DHS] pending the completion of a subsidized guardianship" whereby H.M. would remain in the care and custody of her foster mother, A.H. Petitioner argues that the circuit court's order does not comply with the statute because it places H.M. in the permanent, not temporary, custody of DHS pending completion of the subsidized guardianship, and it expressly precludes her from seeking a modification of the disposition as it provides that only the GAL or DHS may do so and dismisses her from the case. Petitioner contends that the order as written effectively terminates her parental rights as it prevents her from attempting to regain

---

(E) The specific circumstances of the situation which made those efforts unreasonable if services were not offered by the department. *The court order shall also determine under what circumstances the child's commitment to the department are to continue. Considerations pertinent to the determination include whether the child should:*

*(i) Be considered for legal guardianship;*

(ii) Be considered for permanent placement with a fit and willing relative; or

(iii) Be placed in another planned permanent living arrangement, but only in cases where the child has attained 16 years of age and the department has documented to the circuit court a compelling reason for determining that it would not be in the best interests of the child to follow one of the options set forth in subparagraphs (i) or (ii) of this paragraph. The court may order services to meet the special needs of the child. Whenever the court transfers custody of a youth to the department, an appropriate order of financial support by the parents or guardians shall be entered in accordance with § 49-4-801 through § 49-4-803 of this code[.]

(Emphasis added).

11

custody of H.M. The GAL and DHS maintain that the circuit court did not err in its disposition, while acknowledging that a remand for clarification of the circuit court's order may be appropriate.

Disposition under West Virginia Code § 49-4-604(c)(5), commonly called a "section 5" disposition,[8] is utilized upon a finding that a parent is presently unwilling or unable to provide for a child's needs. This statutory provision, which was expressly cited by the circuit court, allows the court to "commit the child *temporarily* to the care, custody and control of the department" and requires the circuit court to determine "under what circumstances the child's commitment to the department are to continue," which may be a legal guardianship, permanent placement with a fit and willing relative, or another planned permanent living arrangement if the child has reached the age of sixteen. W. Va. Code § 49-4-604(c)(5) (emphasis added). Although the circuit court's order indicates that H.M. shall remain in the "permanent care, custody and control of [DHS]" pending completion of the subsidized guardianship, the circuit court's reference to West Virginia Code § 49-4-604(c)(5), establishes that such custody is granted pursuant to what is commonly known as a disposition 5, which, notwithstanding the court's use of the word "permanent," is statutorily defined as a temporary guardianship. The circuit court's use of the phrase

---

[8] *See In re B.W.*, 244 W. Va. 535, 536, 854 S.E.2d 897, 898 (2021) ("the circuit court ordered what is commonly called a 'section 5' disposition under West Virginia Code § 49-4-604(c)(5)").

"permanent care, custody, and control" does not convert the section 5 disposition from its statutory definition as a temporary guardianship.

In addition, the order provides that a motion for modification may be filed by the GAL or DHS and dismisses petitioner from the proceeding. As a less restrictive alternative to termination of parental rights, West Virginia Code § 49-4-604(c)(5) clearly contemplates that a parent may seek to regain custody of his or her child when his or her circumstances change. Moreover, West Virginia Code § 49-4-606 (2015) expressly provides that modification of a disposition order may be sought "upon motion of a child, *a child's parent* or custodian or [DHS] alleging a change of circumstances requiring a different disposition."[9] (Emphasis added). *See also* W. Va. R. Proc. Child Abuse and Neglect P. 46 (providing "[a] child, a child's parent (whose parental rights have not been terminated), a child's custodian, or the [DHS] shall file a motion . . . to modify . . .an order of the court"). Therefore, while the circuit court's order does not explicitly include petitioner as a party who may seek modification of the guardianship, she is, nonetheless, statutorily permitted to seek such modification. Notwithstanding the circuit court's inartful language, the court's determination that H.M.'s placement is in accordance with West Virginia Code § 49-4-604(c)(5) clearly provides petitioner the right to seek modification

---

[9] We note that West Virginia Code § 49-4-606(a) allows for modification of the dispositional order until a child has been adopted. When a child has been adopted, modification is only permitted if the child is removed or relinquished from an adoptive home or other permanent placement after the case has been dismissed. W. Va. Code § 49-4-606(b).

13

of the guardianship whether or not she was listed in the circuit court's rendition of parties entitled to seek such modification. The circuit court's placement of H.M. in a section 5 guardianship pursuant to West Virginia Code § 49-4-604(c)(5) renders such placement "temporary" and subject to petitioner seeking modification in accordance with the statute, regardless of whether such right was explicitly stated by the circuit court.

However, remand to the circuit court is necessary here because the court's order erroneously dismisses the petitioner from the case. At the end of the disposition hearing, the circuit court ordered that a permanency review hearing be held in ninety days to finalize the subsidized guardianship. The court indicated that petitioner "didn't need to attend" as that is "just for [A.H.] and the legal guardianship." Thus, petitioner was not specifically excluded from attending the hearing; however, the disposition order dismisses her from the case even though her parental rights were not terminated. Pursuant to the Rules of Procedure for Abuse and Neglect Proceedings, only parents whose parental rights are terminated are excluded from participating in the permanent placement review hearings that follow disposition and that are required until permanency for the child is achieved.[10]

---

[10] West Virginia § 49-4-608 (2023) provides that permanency is achieved when a child is "placed in an adoptive home, . . . with a natural parent, . . .in legal guardianship, or permanently placed with a fit and willing relative." At that juncture, the case is dismissed from the circuit court's docket. *See* W. Va. R. Abuse and Neglect P. 6 ("Each child abuse and neglect proceeding shall be maintained on the circuit court's docket until permanent placement of the child has been achieved."). Nonetheless, in circumstances like this, where parental rights remain intact and the child is placed in a legal guardianship, a parent like petitioner may still seek modification of the disposition under West Virginia Code § 49-4-

14

*See* W. Va. R. Proc. Abuse and Neglect P. 39(c) (requiring notice of time and place of permanent placement review conference be given "to counsel of record, and all other person entitled to notice and the right to be heard" except for "a party whose parental rights have been terminated by the final disposition order [and] his or her attorney"); *see also* W. Va. Code § 49-4-601(h) (2019) (affording right to be heard "in any proceeding pursuant to this article [to] the party or parties having custodial or other parental rights and responsibilities to the child . . . foster parents, pre-adoptive parents, and relative caregivers"). Because petitioner's parental rights were not terminated, the circuit court erred in ordering her dismissed from this action.

Likewise, the circuit court's order inaccurately provides for "post-termination visitation" because, again, petitioner's parental rights were not terminated. *See* syl. pt. 5, in part, *In re Marley M.*, 231 W. Va. 534, 745 S.E.2d 572 (2013) ("A parent whose rights have been terminated pursuant to an abuse and neglect petition may request post-termination visitation."). When parental rights remain intact, but the child is not returned to the parent(s)' custody, continued visitation may still be granted because "[a] child has a right to continued association with individuals with whom he has formed a close emotional bond . . . provided that a determination is made that such continued contact is in the best interests of the child." Syl. Pt. 11, in part, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996). As required, the circuit court's order includes a finding that H.M.

---

606. *See id.* (providing circuit court retains exclusive jurisdiction over any subsequent requests for modification); *see also* n. 9, *supra*.

15

has a substantial bond with petitioner and that continued visitation with petitioner is in H.M.'s best interests. However, the order provides that this visitation is at the discretion of A.H. We have explained that "continued contact where determined to be in the best interest of the child [can] be ordered not as a right of the parent, but rather as a right of the child." *In re Christina L.*, 194 W. Va. at 455, n.9, 460 S.E.2d at 701, n.9. In other words, "this right of continued association belongs to the child[]." *In re K.S.*, 246 W. Va. 517, 531, 874 S.E.2d 319, 333 (2022) (additional quotations and citation omitted). As such, the terms of this visitation cannot be left to the discretion of the child's guardian. *See id.* (making clear that children's right of post-termination visitation with their mother "cannot be held hostage by the biological fathers"). Instead, "a proper visitation plan must be formulated where visitation is found appropriate." *Id.; see also Matter of Brian D.*, 194 W. Va. 623, 638, 461 S.E3.2d 129, 144 (1995) (directing circuit court to "inquire into the relationship [the child] has formed with his foster parents and, if it is in his best interests, fashion a plan for continued association between the foster parents and the child").

Given the errors and inaccuracies outlined above, we find it necessary to vacate the circuit court's September 27, 2023, order insofar as it dismisses petitioner from the case and provides for post-termination visitation at the discretion of A.H., and we remand this case for entry of a new dispositional order correcting these deficiencies. Upon remand, the circuit court may conduct any further proceedings necessary to permit the entry of a dispositional order in accordance with the statutory provisions and caselaw discussed herein. Given the length of time of that has elapsed since the circuit court made its ruling,

16

a hearing may be necessary to determine whether continued visitation with petitioner remains in H.M.'s best interests, and if so, under what circumstances the visitation may occur.

## IV. Conclusion

For the reasons set forth above, the circuit court's September 27, 2023, dispositional order is affirmed to the extent that it finds that petitioner failed to satisfy the terms of her improvement period and that it is in H.M.'s best interests to be placed in a legal guardianship with A.H. The order is vacated only insofar as it does not comply with the applicable statutory provisions and caselaw discussed herein, and this case is remanded for further proceedings as necessary for entry of a corrected dispositional order consistent with this opinion.

Affirmed, in part, vacated, in part, and remanded with directions.